UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re

POSEIDON POOL & SPA
RECREATIONAL, INC.,

      Debtor.
-----------------------------------------------------------------x
ANDREW M. THALER, Trustee,
Estate of POSEIDON POOL & SPA
RECREATIONAL, INC.,        U.S.D.C.
                 Case No.:  08CV3418(ADS)

      Plaintiff-Appellee,

 - against -           U.S. Bankruptcy Court

ESTATE OF VINCENT J. ARBORE, Deceased,  Case No.:  8-06-08222-dte
DIANE ARBORE, in her capacity as Executrix  .
of the Estate of Vincent J. Arbore,
DIANE ARBORE, ANN ARBORE,
PETER ARBORE, JAYVIN ARBORE,
ALLISON ARBORE, MICHAEL ARBORE,
KATHERINE ARBORE, ALAN ARBORE,
JAMES ARBORE, ROSA DINICOLO, and
RITA CANNILLO,

      Defendants-Appellants.
-----------------------------------------------------------------x

## **DEFENDANTS-APPELLANTS' BRIEF ON APPEAL**

JASPAN SCHLESINGER HOFFMAN LLP
*Attorneys for Defendants-Appellants*
300 Garden City Plaza
Garden City, New York 11530
(516) 746-8000

# TABLE OF CONTENTS

**Page No.**

JURISDICTIONAL STATEMENT ..................................................................................1

ISSUE PRESENTED .......................................................................................................1

APPLICABLE STANDARD OF REVIEW .....................................................................1

DECISION BELOW.........................................................................................................1

STATEMENT OF THE CASE..........................................................................................2

    Factual Background ...............................................................................................2

        (a)   Textron Action....................................................................................6

        (b)   Fraudulent Conveyance Adversary Proceeding ................................8

        (c)   Appellants' Counterclaims ...............................................................8

        (d)   The Trustee's Motion to Dismiss .....................................................9

        (e)   Memorandum Decision and Order Appealed From .........................11

ARGUMENT

    SINCE THE BANKRUPTCY COURT, BY FAILING TO APPLY
    THE BROAD DEFINITION OF "CLAIM" SET FROTH IN THE
    BANKRUPTCY CODE, TO INCLUDE CONTINGENT CLAIMS,
    IT ERRONEOUSLY FOUND APPELLANTS' FIRST AND THIRD
    COUNTERCLAIMS, (INDEMNIFICATION CLAIMS), TO BE
    "POST-PETITION" CLAIMS AND, THEREFORE, IMPROPERLY
    DISMISSED THESE TWO "PRE-PETITION" CLAIMS .............................................13

CONCLUSION.................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases</u>

<u>Page No.</u>

Frenville v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.),
744 F.2d 332 (3d Cir. 1984).............................................................................. 13

In re Amfesco Indus., Inc., 81 B.R. 777 (Bankr. E.D.N.Y. 1998)................................ 15

In re Black, 70 B.R. 645 (Bankr. D. Utah 1986) ......................................................... 15

In re Chateaugay Corp., 944 F.2d 997 (2d Cir. 1991) ................................................. 13

In re Johns-Manville Corp., 57 B.R. 680 (Bankr. S.D.N.Y. 1986)............................... 14

In re Quigley Co., Inc., 383 B.R. 19 (Bankr. S.D.N.Y. 2008)...................................... 15

In re Taibbi, 213 B.R. 261 (Bankr. E.D.N.Y. 1997)..................................................... 14

In re Union Hosp. Ass'n of Bronx, 226 B.R. 134 (Bankr. S.D.N.Y. 1998)................... 15

LTV Steel Co. v. Shalala (In re Chateaugay Corp.), 53 F.3d 478 (2d Cir. 1995), ....................... 15

Mazzeo v. Mazzeo (In re Mazzeo), 131 F.3d 295 (2d Cir. 1997) ................................ 13

Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.),
25 F.3d 1132 (2d Cir. 1994)............................................................................... 1

Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.),
209 F.3d 125 (2d Cir. 2000)............................................................................... 14

Pearl-Phil GMT Ltd. v. Caldor Corp., 266 B.R. 575 (S.D.N.Y. 2001) .................................. 14, 15

Peoples' Democratic Republic of Yeman v. Good Pasture, Inc.,
782 F.2d 346 (2d Cir. 1986)............................................................................... 15

Thaler v. Estate of Arbore et al., (In re Poseidon Pool & Spa Recreational, Inc.)
391 B.R. 234 (Bankr. E.D.N.Y. 2008)........................................................... 1, 15

Woburn Assocs. v. Kahn (In re Hemingway), 954 F.2d 1 (1st Cir. 1992) .................................. 13

Wongco v. Federated Dep't Stores, Inc. (In re R.H. Macy & Co., Inc.),
67 F. App'x 30 (2d Cir. 2003)............................................................................. 14

**Page No.**

Wongco v. Federated Dep't Stores, Inc. (In re R.H. Macy & Co., Inc.),
283 B.R. 140 (S.D.N.Y. 2002)............................................................................................ 13

**Federal Statutes**

11 U.S.C. § 101(5) .............................................................................................................. 13

28 U.S.C. §158(a)(1)............................................................................................................. 1

## JURISDICTIONAL STATEMENT

This appeal is taken, as of right, pursuant to 28 U.S.C. §158(a)(1).

## ISSUE PRESENTED

Did the Bankruptcy Court, in failing to apply, or even recognize, the broad meaning assigned to the term "claim," as defined in Section 101(5) (formerly Section 101(4)) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), clearly err, as a matter of law, in dismissing Appellants' First and Third Counterclaims, for contractual indemnification, when it held that, with respect to the Trustee's fraudulent conveyance action against them (the "Trustee's Adversary Proceeding") and a state court action commenced, inter alia, against Appellants (the "Textron Action"), such indemnification damage claims arose "post-petition" and are unenforceable by reason of the Debtor's insolvency at the date of the petition, pursuant to New York Business Corporation Law ("BCL") Section 513(1)?

## APPLICABLE STANDARD OF REVIEW

This Court, pursuant to Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 8013, shall not set aside the Bankruptcy Judge's findings of fact "unless clearly erroneous." This Court reviews matters of law de novo. See e.g. Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994) (quoting In re PCH Assocs., 949 F.2d 585, 597 (2d Cir. 1991)).

## DECISION BELOW

The decision-order of the Bankruptcy Court being appealed from is officially reported at Thaler v. Estate of Arbore et al., (In re Poseidon Pool & Spa Recreational, Inc.), 391 B.R. 234 (Bankr. E.D.N.Y. 2008).

## STATEMENT OF THE CASE

The subject of this appeal concerns certain pre-petition payments made by the Debtor, Poseidon Pool & Spa Recreational, Inc. (the "Debtor") to Vincent J. Arbore ("Arbore") pursuant to a redemption of corporate stock agreement (the "Redemption Agreement") and promissory note (the "Note"), dated May 24, 2002, entered into by Arbore and the Debtor, and the indemnification provisions contained therein.  This appeal arises from the Bankruptcy Court's (Eisenberg, B.J.) granting of the motion of the Plaintiff, Andrew M. Thaler, as Trustee of the Estate of Poseidon Pool & Spa Recreational, Inc. (the "Trustee"), to dismiss, with prejudice (the "Motion"), the First and Third counterclaims of the appellants, the Estate of Vincent J. Arbore, deceased, Diane Arbore, in her capacity as Executrix of the Estate of Vincent J. Arbore, Diane Arbore, Ann Arbore, Peter Arbore, Jayvin Arbore, Allison Arbore, Michael Arbore, Katherine Arbore, Alan Arbore and James Arbore (collectively, the "Appellants") asserted in their Answer. See Motion to Dismiss/Withdraw with Prejudice the First, Second, Third and Fourth Counterclaims contained in the Answer to the Second Amended Complaint dated October 2, 2007 filed by Defendants (the "Motion to Dismiss"), Appellants' Designation of the Record and Statement of Issues on Appeal (the "Designation of the Record") No. 4.

### *Factual Background*

On or about May 24, 2002, the Debtor redeemed ten (10) company shares of stock held by Vincent J. Arbore for the purchase price of $450,000.00 pursuant to the Redemption Agreement.  See Redemption Agreement, Exhibit A to the Reply of Defendant Estate of Vincent J. Arbore and the Arbore Defendants to Trustee's Motion to Dismiss these Defendants' Counterclaims ("Reply to the Motion to Dismiss"), Designation of the Record No. 6.

This Redemption Agreement was the result of a so-ordered stipulation of settlement, dated May 28, 2002, in the action entitled <u>Vincent J. Arbore, individually, and as a shareholder of Poseidon Pool & Spa Recreational, Inc. a/k/a Pool & Spa Recreational, Inc. v. Poseidon Pool & Spa Recreational, Inc. a/k/a Pool & Spa Recreational, Inc., Timothy Greco, Kathleen Gartner and Joseph Gartner</u>, Supreme Court of New York, Nassau County Index No. 01-013666, pursuant to which the Debtor agreed, <u>inter alia</u>, to execute and deliver a redemption agreement, a promissory note and guarantee to Arbore.  <u>See</u> So Ordered Stipulation of Settlement, Exhibit A to Response in Opposition to the Trustee's Supplemental Affirmation in Support of His Motion to Dismiss the Arbore Defendants' Counterclaims ("Response in Opposition to Supplemental Affirmation"), Designation of the Record No. 8.

In connection with the Redemption Agreement, and pursuant to the So Ordered Stipulation, the Debtor executed and delivered to Arbore the Note in the principal amount of $400,000.00.  <u>See</u> Promissory Note, Exhibit A to Answer to Second Amended Complaint with Counterclaims ("Answer to Second Amended Complaint"), Designation of the Record at No. 2.

Additionally, contemporaneously with the Note, and pursuant to the So Ordered Stipulation of Settlement, the Debtor and Kathleen Gartner, Joseph Gartner, and Timothy Greco, individually, each executed a Guarantee and Pledge Agreement (the "Guarantee").  <u>See</u> Guarantee and Pledge Agreement, Exhibit C to Reply to the Motion to Dismiss, Designation of the Record No. 6.

The Redemption Agreement, Section 3.03 provides that "[t]he Company is <u>solvent</u> and the redemption contemplated hereby will not impact negatively any creditor of the Company." <u>See</u> Redemption Agreement, Exhibit A to Reply to the Motion to Dismiss, Designation of the Record No. 6 (emphasis added).  Section 8.01 of the Redemption Agreement sets forth that

representations, warranties, covenants and agreements of Seller, the Company and the Manager contained in this Agreement will survive the closing. <u>See</u> Redemption Agreement, Exhibit A to Reply to the Motion to Dismiss, Designation of the Record No. 6.  The Redemption Agreement further provides

>   5.02   <u>Indemnification of Directors and Officers</u>.  Until all amounts due under the Note have been paid in full, Purchaser will not, nor will it permit any of its subsidiaries to, take any action to amend any provision of the certificate of incorporation or by-laws (or other comparable corporate charter documents) of the Company that provides for indemnification of directors, officers or employees (including an amendment effected through a merger, consolidation, sale of all or substantially all the assets, liquidation or dissolution of any such corporation), if the effect of such amendment would be to adversely affect the rights provided thereby to any Person who shall have served as a director or officer of the Company before the Closing Date in respect of actions taken in such capacity on or prior to the Closing Date, unless such Person would immediately thereafter be entitled to indemnification by Purchaser or another subsidiary of Purchaser comparable to that provided by the affected provision prior to any such amendment.

<u>See</u> Redemption Agreement, Exhibit A to Reply to the Motion to Dismiss, Designation of the Record No. 6.  The Note provides in pertinent part:

>   5.   Expenses.  If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises <u>to pay all costs of collection, including reasonable attorneys' fees</u>, and all expenses in connection with the protection or realization of the collateral securing this Note or the enforcement of any guaranty <u>hereof incurred by the holder hereof on account of such collection, such costs and expenses will include all costs, expenses and reasonable attorneys' fees incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway materially and adversely affects the exercise by the holder hereof of its rights and remedies under this Note</u> or under any or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein.

<u>See</u> Promissory Note, Exhibit A to Answer to Second Amended Complaint, Designation of the Record No. 2 (emphasis added).

The Guarantee pertinently provides as follows:

3.01   **The Guarantee**.  The Pledgors, jointly and severally, hereby guarantee to the Secured Party and his successors and assigns, that if the Company fails to pay when due (whether at stated maturity, by acceleration or otherwise) any of the Secured Obligations, the Pledgors will promptly pay the same, without any demand or notice whatsoever, and that, in the case of any extension of time of payment or renewal of any of the Secured Obligations, the same will be promptly paid in full when due according to the terms of such extension or renewal. (Emphasis supplied).

3.02   **Obligations Unconditional**.  The obligations of the Pledgors under Section 3.01 are absolute and unconditional, irrespective of the value, genuineness, validity, regularity or enforceability of the Redemption Agreement, or any other Operative Agreement, as defined in the Redemption Agreement, or any other agreement or instrument referred to herein or therein, or any substitution, release or exchange of any other guarantee of or security for any of the Secured Obligations, and, to the fullest extent permitted by applicable law, irrespective of any other circumstance whatsoever which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor, it being the intent of this Section 3.02 that the obligations of the Pledgors hereunder will be absolute and unconditional, joint and several with that of any other guarantor of the Secured Obligations, under any and all circumstances.  Without limiting the generality of the foregoing, it is agreed that the occurrence of any one or more of the following will not affect the liability of the Pledgor hereunder. (Emphasis supplied).

See Guarantee and Pledge Agreement, Exhibit C to Reply to the Motion to Dismiss,

Designation of the Record No. 6 (emphasis added).

On or about October 7, 2005, the Debtor defaulted under the Note contemporaneously

with its filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

On or about November 3, 2006, the Estate of Vincent J. Arbore (the "Estate") and Diane

Arbore as Executrix, commenced an action against Kathleen Gartner, Joseph Gartner and

Timothy Greco, the managers of Poseidon who guaranteed payment, by the Debtor, for Vincent

Arbore's shares pursuant to the Note and Guarantee, entitled Diane Arbore, as Executrix of the

Estate of Vincent J. Arbore, and the Estate of Vincent J. Arbore v. Kathleen Gartner, Joseph

Gartner and Timothy Greco, Supreme Court of the State of New York, Nassau County Index No.

018131/06, seeking the balance due and owing under the Note.  See Summons and Verified

Complaint, Exhibit D to Response in Opposition to Supplemental Affirmation, Designation of the Record No. 8.  The Debtor was not named, by reason of its earlier filing of the Chapter 11 Case.

On April 18, 2006, judgment was entered in favor of the Estate and Diane Arbore as Executrix and against the individual Defendants, jointly and severally, in the amount of $285,542.72 (the "Judgment").  To date, no part of the Judgment has been paid.

### *(a) Textron Action*

Appellants have incurred expenses and costs, including attorneys' fees, and continue to do so, in attempting to collect upon the Judgment, including but not limited to, judgment enforcement measures and motion practice and having to commence a fraudulent conveyance action based upon defendant Kathleen Gartner's attempts to dissipate her assets by transferring real property to her holding company.

Appellants have also incurred expenses and costs, including attorneys fees, in connection with the action commenced by Textron Financial Corporation ("Textron") on or about September 1, 2005, entitled Textron Financial Corporation v. Poseidon Pool & Spa Recreational, Inc., Timothy Greco, Christine Greco, Estate of Vincent Arbore, Ann Arbore and Joseph Gartner, Supreme Court of the State of New York, Suffolk County Index No. 21113/05 (the "Textron Action").  The causes of action in the Textron Action included claims for breach of contract of a finance plan and a wholesale security agreement, replevin, conversion and fraud. Textron perfected its lien by filing a UCC Financing Statement, which granted Textron a lien upon all of the Debtor's inventory financed by Textron.

The Textron complaint alleged, inter alia, that on or about November 11, 2000, Timothy and Christine Greco, Vincent Arbore and Ann Arbore each executed a document, a purported

"Guaranty" whereby each personally, and unconditionally, guaranteed the Debtor's obligations to Textron.  The fraud alleged in Textron's complaint was that defendant Joseph Gartner, the President of the Debtor, who allegedly witnessed the signatures on these personal guarantees, falsely and misrepresented the accuracy of the signatures of the guarantors, including Arbore and Ann Arbore, on their personal guarantees.

In their October 26, 2005 answer to Textron's complaint, Arbore and Ann Arbore asserted cross-claims against Joseph Gartner and subsequently submitted an affidavit of John Paul Osborn, a forensic document examiner, who found that the signatures in the Guarantees of these Arbore Defendants were forged.  See Affidavit of John Paul Osborn and Report, Exhibit D to Reply to the Motion to Dismiss, Designation of the Record No. 6.

Thereafter, on January 9, 2006, Ann Arbore submitted her affidavit in support of their motion for summary judgment upon their cross-claims of forgery against Joseph Gartner.    At that time, they noted that "Textron has submitted no evidentiary material repudiating the expert's conclusions, despite having the expert's report since October 28, 2005."

On June 7, 2006, the following named parties in the Textron Action executed a stipulation of dismissal with prejudice as to (a) Christine Greco, and (b) the Estate of Vincent Arbore and Ann Arbore, which was subsequently so-ordered by the Supreme Court of the State of New York, Suffolk County (Baisley, J.).  See Stipulation of Dismissal with Prejudice as to Christine Greco, the Estate of Vincent J. Arbore and Ann Arbore, Exhibit B to the Motion to Dismiss, Designation of the Record No. 4; Short Form Order (Baisley, J.S.C.), Exhibit C to the Motion to Dismiss, Designation of the Record No. 4.

Appellants have also incurred expenses and costs, including attorneys' fees, and continues to do so, related to the Debtor's Chapter 7 Case and the adversary proceeding initially brought by the Debtor to recover certain sums paid to the Appellants under the Note.

### (b) Fraudulent Conveyance Adversary Proceeding

The fraudulent conveyance adversary proceeding was commenced by the Debtor on or about June 8, 2006 against, inter alia, the Appellants (the "Adversary Proceeding"). Following the conversion of the Debtor's bankruptcy case to one under Chapter 7 on September 21, 2006, the Trustee was appointed. Thereafter, the Trustee amended the original complaint in the Adversary Proceeding, and filed a Second Amended Complaint, dated September 6, 2007. See Second Amended Complaint Adding Parties ("Second Amended Complaint"), Designation of the Record No. 1.

The Second Amended Complaint seeks to avoid the Note and Agreement, and all payments made thereunder, pursuant to Sections 541, 544, 548, and 550 of the Bankruptcy Code, Section 270 et seq. of the New York Debtor and Creditor Law ("Debt. & Cred. Law") and/or declared a nullity pursuant to Section 513(a) of the New York Business Corporation Law ("Bus. Corp. Law"). See Second Amended Complaint, Designation of the Record No. 1. In pertinent part, BCL §513(a) provides that "A corporation . . . may purchase its own shares, or redeem its redeemable shares out of surplus except when currently the corporation is insolvent or would thereby be rendered insolvent."

### (c) Appellants' Counterclaims

Appellants' filed an Answer to the Second Amended Complaint with Counterclaims, dated October 2, 2007 (the "Answer"). See Answer to Second Amended Complaint, Designation of the Record No. 2. The four (4) counterclaims in the Answer seek (i) contractual

indemnification pursuant to the Note and Redemption Agreement for any and all damages, including attorneys' fees, the Appellants suffer as a result of the pending state court litigation with Textron; (ii) common law indemnification for any and all damages, including attorneys' fees, they suffer as a result of the state court litigation with Textron; (iii) contractual indemnification pursuant to the Note and Redemption Agreement for any and all damages, including attorneys' fees, they suffer as a result of any state or federal court action, including but not limited to the Adversary Proceeding; and (iv) common law indemnification for any and all damages, including attorneys' fees, they suffer as a result of any state or federal court action, including but not limited to the Adversary Proceeding. See Answer to Second Amended Complaint, Designation of the Record No. 2.

The Trustee's claims in the Adversary Proceeding materially and adversely affect the ability of the Appellants to exercise, inter alia, their rights and remedies under the Note since the Second Amended Complaint seeks to avoid the same. See the Second Amended Complaint, Designation of the Record No. 1. Accordingly, pursuant to common law and the terms of the Note and Redemption Agreement, the Appellants are entitled to their attorneys' fees in defending this Adversary Proceeding.

### (d) The Trustee's Motion to Dismiss

On December 11, 2007, the Trustee moved to dismiss the Appellants' four (4) counterclaims. See Motion to Dismiss, Designation of the Record No. 4; Memorandum of Law in Support of Plaintiff's Motion to Dismissed Defendants' Counterclaims, Designation of the Record No. 5. Appellants opposed the Motion to Dismiss the First and Second Counterclaims seeking indemnification from the Textron state court action as the costs and expenses of the Arbore Defendants are reimbursable by the Debtor to the Appellants since the claims within are

based upon the forged signatures of the Appellants to personal guarantees by the Debtor's principal, Joseph Gartner.  See Reply to the Motion to Dismiss, Designation of the Record No. 6. With respect to the Third and Fourth Counterclaims, Appellants opposed the Motion to Dismiss on the basis that the indemnification provisions contained the Note and Redemption Agreement allow for indemnification arising out of any state court action or federal court action, and therefore include fees incurred in defending the Adversary Proceeding.  See Reply to the Motion to Dismiss, Designation of the Record No. 6.

Both the Trustee and the Appellants filed additional briefs with respect to the Motion to Dismiss.    See Supplemental Affirmation in Support of Plaintiff's Motion to Dismiss Counterclaims ("Supplemental Affirmation in Support of Motion to Dismiss"), Designation of the Record No. 7; Response in Opposition to Supplemental Affirmation, Designation of the Record No. 8.

Hearings on the Trustee's Motion to Dismiss and the Appellants' Opposition were held on March 11, 2008 and May 15, 2008.  See Transcript of Hearing Held on March 11, 2008, Designation of the Record Nos. 9 and 10; Transcript of Hearing Held on May 15, 2008, Designation of the Record Nos. 17 and 18.  Following the May 15, 2008 Hearing, the parties submitted additional briefs to the Bankruptcy Court on the limited issues of the Debtor's solvency, and the application of Section 513(a) of the Bus. Corp. Law to payments made and the Note and Redemption Agreement in the Adversary Proceeding.  Pursuant to the Bankruptcy Court's request, the parties submitted additional briefs on these limited issues.  See Supplemental Affirmation in Support of Plaintiff's Motion to Dismiss Counterclaims, Designation of the Record No. 19; Memorandum of Law in Opposition of the Arbore Defendants to Trustee's Motion to Dismiss Their Counterclaims to His Above-Captioned Adversary Proceeding ("Memo

of Law in Opposition to Motion to Dismiss"), Designation of the Record, No. 20. Appellants maintain, and have always maintained, that the Trustee was misapplying Section 513(a) of the Bus. Corp. Law in concluding that since the Debtor was allegedly insolvent on October 7, 2005, the date the Debtor filed for Chapter 11 relief under the Bankruptcy Code, the Note and Redemption Agreement were unenforceable and the indemnification provisions were void. <u>See</u> Memo of Law in Opposition to Motion to Dismiss, Designation of the Record No. 20, at pages 5 to 7. Rather, Section 513(a) of the Bus. Corp. Law operates only to prevent the Debtor from purchasing or redeeming its stock at the time it is insolvent or may be insolvent, and cannot reach payments made prior to the commencement of the Chapter 11 case since there is no evidence that the Debtor was insolvent at those times. <u>See</u> Memo of Law in Opposition to Motion to Dismiss, Designation of the Record No. 20, at pages 8 to 9. Moreover, Section 513(a) of the Business Corporation Law is inapplicable since there was no purchase or redemption of shares during a period of insolvency of the Debtor, and the pre-petition indemnification provisions in the Note and Redemption Agreement are enforceable in the Adversary Proceeding. <u>See</u> Memo of Law in Opposition to Motion to Dismiss, Designation of the Record No. 20, at pages 9 to 12.

### *(e) Memorandum Decision and Order Appealed From*

The Bankruptcy Court conducted an additional hearing on the Motion to Dismiss on June 24, 2008. <u>See</u> Transcript of Hearing Held on June 24, 2008, Designation of the Record Nos. 21 and 22. Thereafter, the Bankruptcy Court entered an Order and memorandum decision, dated July 3, 2008 (Eisenberg, J.) dismissing the Appellants' first and third counterclaims with prejudice, dismissing the fourth counterclaim without prejudice and ordering a hearing to be held on the second counterclaim (the "Order and Decision"). <u>See</u> Memorandum/Decision Granting

Summary Judgment for the dismissal of the first and third counterclaims with prejudice, Designation of the Record No. 49; Order Granting Motion to Dismiss and Scheduling Hearing, Designation of the Record No. 50.

Following the entry of the Order and Decision, Appellants' filed a Notice of Appeal of the Order and Decision to the United States District Court for the Eastern District of New York on July 11, 2008.  See Notice of Appeal, Designation of the Record No. 25.

This appeal is based upon the erroneous findings made by the Bankruptcy Court in dismissing the Appellants' first and third counterclaims, with prejudice.  Specifically, the Bankruptcy Court erred when it held, as a matter of law, that the contractual indemnification payments due to the Appellants' for attorneys' fees incurred in defending a pre-petition state court action commenced by Textron against some of the Appellants were post-petition payments that rendered the indemnification provisions in the Redemption Agreement unenforceable and in violation of Section 513(a) of the New York Bus. Corp. Law.  Further, the Bankruptcy Court erred, as a matter of law, when it held that the indemnity provisions of the Redemption Agreement and the Note, pursuant to Section 513(a) of the Bus. Corp. Law, rendered such contractual, inter alia, indemnification damages suffered by the Defendant to have arisen post-petition while the Debtor was insolvent.

**ARGUMENT**

**SINCE THE BANKRUPTCY COURT, BY FAILING TO APPLY
THE BROAD DEFINITION OF "CLAIM" SET FORTH
IN THE BANKRUPTCY CODE, TO INCLUDE CONTINGENT
CLAIMS, IT ERRONEOUSLY FOUND APPELLANTS'
FIRST AND THIRD COUNTERCLAIMS,
(INDEMNIFICATION CLAIMS), TO BE "POST-PETITION"
CLAIMS AND, THEREFORE, IMPROPERLY
DISMISSED THESE TWO "PRE-PETITION" CLAIMS**

It is not disputed that the Redemption Agreement and Promissory Note, as well as the Guarantee and Pledge Agreement, were executed, inter alia, by Poseidon and Vince J. Arbore, on or about May 24, 2002 – more than three (3) years preceding Poseidon's Chapter 11 filing date on October 7, 2005.

Most critically, the "flawed premise" upon which the Bankruptcy Court rested its decision and, indeed, which pervades the decision, is that Appellants' First and Third Counterclaims should be dismissed, with prejudice, "because they are based on post-petition obligations, not pre-petition claims."   Cf. Wongco v. Federated Dep't Stores, Inc. (In re R.H. Macy & Co., Inc.), 283 B.R. 140, 145 (S.D.N.Y. 2002) (finding that the claims in that case to be pre-petition claims).

Clearly, the Bankruptcy Court did not focus upon or even mention, the broad definition of "claim" under Bankruptcy Code Section 101 (5), which includes, within its contours, "a right to payment, whether or not such right is reduced to judgment . . . contingent . . . [or] unmatured . . ." 11 U.S.C. § 101(5) (emphasis added); cf. Mazzeo v. Mazzeo (In re Mazzeo), 131 F.3d 295, 303 (2d Cir. 1997) (explaining the meaning of "contingent" and noncontingent "claims"); In re Chateaugay Corp., 944 F.2d 997, 1003 (2d Cir. 1991); Woburn Assocs. v. Kahn (In re Hemingway), 954 F.2d 1, 8 (1st Cir. 1992); Frenville v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.), 744 F.2d 332, 336 (3d Cir. 1984); see also In re Johns-Manville Corp., 57 B.R. 680

(Bankr. S.D.N.Y. 1986).   Indeed, it has been held that, "At this point in the development of bankruptcy jurisprudence, it is settled that when enacting [Bankruptcy Code Section 101(5)] . . . Congress intended to adopt the broadest possible definition of 'claim' . . . ."  In re Taibbi, 213 B.R. 261, 265 (Bankr. E.D.N.Y. 1997) (citing Pa. Dept. of Public Welfare v. Davenport, 495 U.S. 552, 558 (1990)).

It is indisputable "'that a claim is . . . allowable . . . in a bankruptcy proceeding even if it is a cause of action that has not yet accrued,' . . . we have determined that contingent claims encompass 'obligations that will become due upon the happening of a future event that was within the actual or personal contemplation of the parties at the time the original relationship between the parties was created.'"  Wongco v. Federated Dep't Stores, Inc. (In re R.H. Macy & Co., Inc.), 67 F. App'x 30, 32 (2d Cir. 2003) (citations omitted); see also Pearl-Phil GMT Ltd. v. Caldor Corp., 266 B.R. 575, 581 (S.D.N.Y. 2001) (hereinafter "Pearl-Phil").

Accordingly, it has been uniformly held that "Under contract law, a right to payment based [as here] on a written indemnification contract arises at the time the indemnification agreement is executed."   Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.), 209 F.3d 125, 129 (2d Cir. 2000) (emphasis added) (citing Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant), 188 B.R. 347, 358-59 (Bankr. S.D.N.Y. 1995)), cited in In re M. Fabrikant & Sons, Inc., 385 B.R. 87, 95 (Bankr. S.D.N.Y. 2008).

Since the indemnity provisions of the executed Agreement and Note here, as just observed, well preceded the filing of Poseidon's Chapter 11 petition, those contractual provisions, allowing for indemnification, constitute pre-petition claims, not post-petition claims as the Court below was incorrectly informed when it dismissed the Counterclaims involved here.

Similarly, "a third parties' claim for indemnity . . . against a debtor arising from a pre-bankruptcy tort [as in the Textron case] is a pre-petition claim against the bankruptcy estate . . ." In re Union Hosp. Ass'n of Bronx, 226 B.R. 134, 138 (Bankr. S.D.N.Y. 1998) (citing Acevedo v. Van Dorn Plastic Mach., 68 B.R. 495 (Bankr. E.D.N.Y. 1986)).  Indeed, as noted in LTV Steel Co. v. Shalala (In re Chateaugay Corp.), 53 F.3d 478 (2d Cir. 1995), (Chateaugay II) cert. denied, 516 U.S. 913 (1995), "A claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts."  53 F.3d at 497.

Moreover, the Bankruptcy Court, building upon its faulty foundation that the subject indemnity agreements are post-petition claims, additionally and quite erroneously, found, under New York law, BCL Section 513(a), that Appellants are debarred from any recovery  for such claims since, post-petition, the Debtor was insolvent.  See In re Poseidon Pool & Spa Recreational, Inc., 391 B.R. at 243-45.  Of course, since the indemnity claims here are, without question, pre-petition claims, that analysis collapses as well.

Finally, a Federal Court applying the Bankruptcy Code definition of "claim", may not rely upon or attach any legal significance to, for example, New York law (see e.g. Peoples' Democratic Republic of Yeman v. Good Pasture, Inc., 782 F.2d 346, 350 (2d Cir. 1986)), which holds that the accrual of an indemnification claim occurs when the party seeking indemnification has been paid.  Rather, as recently observed in In re Quigley Co., Inc., 383 B.R. 19, 25 (Bankr. S.D.N.Y. 2008), "[t]he broad definition of 'claim' can encompass a right to payment that is not enforceable under State law."  383 B.R. at 25 (citing Grady v. A.H. Robins Co., Inc., 839 F.2d 198 (4th Cir. 1988)); see also In re Amfesco Indus., Inc., 81 B.R. 777, 780-81 (Bankr. E.D.N.Y. 1998); Pearl-Phil, supra, 266 B.R. at 581; In re Black, 70 B.R. 645 (Bankr. D. Utah 1986) (in the

face of the broad scope of "claim" in the Bankruptcy Code, refusing to apply Utah law as to when a cause of action first arises).

## CONCLUSION

The Bankruptcy Court's decision wholly failed, in its dismissal of Appellants' subject Counterclaims, to apply, let alone refer to, the broad definition of claims in the Bankruptcy Code to encompass, inter alia, contingent claims. It crucially committed clear reversible error when it found the indemnity agreement obligations "unenforceable against the Debtor during the post-petition period" since, under impenetrable prior case law, the indemnity agreements became contingent claims at the time they were executed – i.e. pre-petition claims.

Thus, for all of the reasons set forth above, the Bankruptcy Court's dismissal of the Appellants' First and Third Counterclaims, with prejudice should, in all respects, be reversed, as a matter of law.

Dated: Garden City, New York
      September 11, 2008

Respectfully submitted,

JASPAN SCHLESINGER HOFFMAN, LLP
*Attorneys for Appellant-Defendants*
300 Garden City Plaza
Garden City, New York 11530
(516) 746-8000

By:      s/Joel Lewittes
         JOEL LEWITTES (JL-6576)
         Of Counsel to the Firm